IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 27, 2018 Session

## QUINCY MOUTRY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 102203, 103020 G. Scott Green, Judge**

_____

### No. E2017-00353-CCA-R3-PC

_____

The Petitioner, Quincy Moutry, appeals the post-conviction court's denial of his petition for post-conviction relief in which he challenged his convictions for carjacking, aggravated robbery, and possession of a firearm with the intent to go armed during the commission of a dangerous felony and his effective twenty-seven-year sentence. On appeal, the Petitioner asserts that he received ineffective assistance of counsel at trial. Upon reviewing the record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

Cullen M. Wojcik (on appeal) and Mary Ward (at hearing), Knoxville, Tennessee, for the appellant, Quincy Moutry.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Charme P. Allen, District Attorney General; and Takisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

The Petitioner's convictions stem from his participation in a carjacking. The Petitioner was charged through a presentment, which stated that the offenses occurred on March 13, 2008. *See State v. Quincy D. Moutry*, No. E2011-02531-CCA-R3-CD, 2013

WL 3105616, at *1 (Tenn. Crim. App. June 17, 2013), *perm. app. denied* (Tenn. Nov. 13, 2013). After the jury was sworn on the day of trial, the prosecutor informed the trial court that she believed the State previously had filed a motion to amend the indictment to change the offense date to March 4, 2008, and that the trial court had not yet ruled on the motion. *Id.* Trial counsel stated that he had not been served with an amendment and objected to the amendment. *Id.* In response to questioning by the trial court, trial counsel stated that he did not file a notice of an alibi defense and maintained that the Petitioner was in custody on March 13, the offense date listed in the presentment. *Id.* The prosecutor responded that based upon the discovery provided to the defense, the defense was on notice that the offense date was March 4. *Id.* The trial court permitted the amendment, allowing the charges to be read as "a day in March." *Id.*

The victim testified at trial that on the day of the offenses, she and the Petitioner arranged to meet at a nearby Burger King parking lot after the Petitioner called her and stated that he recently had broken up with his girlfriend. *Id.* at *2. When the victim arrived, the Petitioner exited a Dodge Durango and entered the victim's car. *Id.* The Petitioner exchanged text messages with someone and exited the victim's car. *Id.* Another man came from the Durango, entered the victim's car, and pointed a gun at her. *Id.* She tried to flee as the man was attempting to cock the gun. *Id.* Another individual came from the direction of the Durango and began pistol-whipping the victim in an attempt to force her back inside her car. *Id.* The men fled in the victim's car after seeing someone exit Burger King. *Id.*

The victim called the Petitioner and then 9-1-1. *Id.* She then called the Petitioner again and was speaking to him when the police arrived at Burger King. *Id.* Officers located the victim's abandoned car near the scene. *Id.* A copy of the victim's cellular phone records and a printout of the 9-1-1 calls on March 4, 2008, were entered into evidence. *Id.* The victim later identified the Petitioner in a photographic array that she signed and dated March 14, 2008. *Id.* On cross-examination, the victim testified that she believed she met with the detective and viewed the photographic arrays on the day following the offenses. *Id.*

Officers subsequently initiated a traffic stop of the Durango. *Id.* at *3. A passenger exited the vehicle and fled, evading arrest. *Id.* The officers located the Petitioner's cellular phone inside the Durango, and records established that the cellular phone had been used to call the victim just prior to the offenses. *Id.*

On March 5, 2008, at approximately 1:00 a.m., the Petitioner called the police and reported that his Durango was missing. *Id.* When Officer Darrell Sexton went to the Petitioner's residence, the Petitioner refused to allow Officer Sexton inside the residence and spoke to him through a security door. *Id.* The Petitioner maintained that he allowed

a friend to borrow the vehicle but that the friend failed to return it. *Id.* The Petitioner stated that his cellular phone was still inside the vehicle. *Id.* Officer Sexton testified that the Petitioner's clothes were "consistent" with the clothes of the person who had evaded arrest earlier in the evening. *Id.*

Officer Joshua Shaffer interviewed the Petitioner about the offenses after the victim identified him in the photographic array. *Id.* Although the Petitioner admitted to knowing the victim, he denied participating in the offenses. *Id.* On cross-examination, Officer Shaffer testified that the Petitioner was arrested on March 10, 2008, on an unrelated charge and remained in custody until March 17. *Id.* On redirect examination, Officer Shaffer confirmed March 4, 2008, as the offense date. *Id.*

The jury convicted the Petitioner of carjacking, aggravated robbery, and possession of a firearm with the intent to go armed during the commission of a dangerous felony. The trial court imposed an effective sentence of twenty-seven years. This court upheld the Petitioner's convictions on direct appeal. *See id.* at *1.

## Post-Conviction Proceedings

The Petitioner subsequently sought post-conviction relief, alleging multiple grounds of ineffective assistance of counsel. At the evidentiary hearing, trial counsel testified that after he was appointed to represent the Petitioner, he met with the Petitioner on several occasions. The Petitioner was released on bond pending trial, and trial counsel stated that he met with the Petitioner at the courthouse during court appearances and on two or three occasions at trial counsel's office. Trial counsel said he reviewed with the Petitioner the discovery provided by the State and the offense date listed in the presentment.

Trial counsel also utilized the services of an investigator. He did not recall whether the investigator interviewed the victim and said the victim was the only witness who he believed the investigator should have interviewed.

The Petitioner told trial counsel that he did not know the victim, had never had any contact with her, and was not present when the offenses occurred. Trial counsel recalled that the defense centered on the fact that the original presentment listed the offense date as a date during which the Petitioner was incarcerated. Over trial counsel's objection, the trial court allowed the State to amend the presentment on the day of trial. Trial counsel stated that he advised the Petitioner against relying primarily upon an alibi defense based on the Petitioner's incarceration on the date of the offense alleged in the presentment. Trial counsel explained that the defense was coupled with and strengthened by a defense that the Petitioner was not involved and did not know the victim.

Trial counsel noted that telephone records established calls between the Petitioner and the victim and that evidence was presented at trial that they had some sort of relationship prior to the offenses. Trial counsel said he first learned of the prior relationship between the Petitioner and the victim at trial. He said the Petitioner always maintained prior to trial that he did not know the victim and had never had any contact with her.

Trial counsel said he discussed with the Petitioner whether the Petitioner should testify at trial. Trial counsel stated that he and the Petitioner reviewed the Petitioner's criminal history and the discovery. Trial counsel believed that if the Petitioner testified, information regarding the Petitioner's criminal history and background would have been presented to the jury. As a result, trial counsel advised the Petitioner against testifying at trial.

Trial counsel did not present any evidence on behalf of the defense at trial. He acknowledged that he did not cross-examine several witnesses at trial and explained that he did not question witnesses on cross-examination if the witnesses did not have any anything "to add that would benefit my client's defense." In preparing for his cross-examination of the victim, trial counsel met with the Petitioner, reviewed the victim's statements and criminal history, and created an outline. Trial counsel did not interview the victim prior to trial. He stated that while he likely spoke to one of the officers, he did not recall when he did so. Trial counsel explained that he did not attempt to locate anyone who could have committed the offenses because he did not believe that the Petitioner would have any knowledge as to who committed the offenses since the Petitioner maintained that he was not involved and did not know the victim.

Trial counsel testified that while the prosecutor often submits a plea offer, he did not recall the prosecutor submitting any plea offers in the Petitioner's case. Trial counsel noted that the Petitioner had an extensive criminal history and spent a vast majority of his adult life in confinement. He denied the Petitioner's claims that he had failed to inform the Petitioner of any plea offers.

Trial counsel did not believe that he submitted a sentencing memorandum to the trial court in which he addressed mitigating factors. He did not present any proof during the sentencing hearing.

On cross-examination, trial counsel acknowledged that he was appointed to represent the Petitioner in January 2010 and that he requested discovery from the State in February 2010. He stated that upon receiving discovery from the State, he typically reviews it and provides a copy of the discovery to his client and that he believed he adhered to his customary practices in the Petitioner's case.

Trial counsel recalled that the Petitioner provided him with printouts of the dates in which the Petitioner was in custody. Trial counsel showed those printouts to the prosecutor in an effort to dismiss the charges. He recalled that the defense was dependent upon his ability to attack the victim's identification of the Petitioner as a perpetrator.

The Petitioner testified that trial counsel only met with him once prior to trial and only had one telephone conversation with him. The Petitioner stated that the meeting occurred in 2010 approximately one month prior to trial at trial counsel's office and only lasted ten to fifteen minutes. He said that during the meeting, trial counsel told him that he should not worry about the charges because the State did not have any evidence against him. The Petitioner also stated that the investigator did not meet with him until approximately three days prior to trial and that the investigator informed him of his inability of locate the victim.

The Petitioner maintained that trial counsel failed to prepare for trial. He explained that trial counsel should have conducted an investigation, attempted to contact witnesses, and identified those witnesses to the Petitioner. The Petitioner stated that trial counsel did not review the discovery or discuss possible defenses with him. He also stated that the only discovery material that he received was the 9-1-1 call log and that he did not learn of the recovery of a cellular phone until he read the trial transcript. The Petitioner maintained that trial counsel did not discuss the issue of the offense date listed in the presentment with him. He stated that while he instructed trial counsel to obtain his jail records to show that he was incarcerated when the offenses occurred, trial counsel failed to do so. The Petitioner also stated that trial counsel never presented him with a plea offer.

The Petitioner stated that he told trial counsel that he wanted to testify at trial but that trial counsel failed to call him to testify. The Petitioner said that trial counsel did not ask him on the day of trial whether he wanted to testify and never told him that he had a right to testify. The Petitioner also said that trial counsel only cross-examined three of the State's witnesses.

The Petitioner maintained that trial counsel did not meet with him prior to the sentencing hearing, did not ask him whether he wanted any family members to testify on his behalf at the sentencing hearing, and did not advise him of his possible sentence. He complained that trial counsel did not file any documents on his behalf for purposes of sentencing and did not present any evidence during the sentencing hearing.

On cross-examination, the Petitioner testified that when he was arrested, he told the police officers that he had no knowledge of the offenses. He stated that his defense was that he was not guilty because he was not involved in the commission of the

offenses. He denied reporting the Durango as stolen but acknowledged that an officer identified him as the person who reported the vehicle as stolen. He said he wanted trial counsel to argue at trial that the Petitioner was not guilty, did not know the victim, and was in jail when the offenses occurred. While the Petitioner maintained that the jail records established that he was incarcerated on March 10, 2008, the records did not show that he was incarcerated on March 4.

The Petitioner was released on bond when trial counsel was appointed to represent him. The Petitioner stated that while in court following his appointment in January 2010, trial counsel gave him a business card and informed him that the State did not have any evidence against him. The Petitioner stated that as a result of trial counsel's assertions, the Petitioner did not go to trial counsel's office for a meeting until the summer of 2010. The Petitioner said the meeting lasted twenty to forty minutes. He stated that he did not go to trial counsel's office for another meeting prior to trial because he trusted trial counsel's statements that the State did not have any evidence establishing guilt. The Petitioner also stated that he and trial counsel also met during court appearances but that they only discussed the lack of the State's proof.

The Petitioner testified that he did not provide trial counsel with the names of any witnesses to interview because no such witnesses existed. He also testified that he trusted trial counsel to build a defense around the Petitioner's assertions that he did not know the victim and did not commit the offenses. The Petitioner said that he also told the investigator that he did not know the victim and did not commit the offenses. The Petitioner maintained that he first learned at trial that the victim identified him in a photographic array.

The Petitioner stated that had he testified at trial, he would have maintained that he was in jail when the offenses occurred. He maintained that he did not hear the trial judge inform him of his right to testify during a hearing at trial because the judge was speaking in a low voice.

Following the hearing, the post-conviction court entered an order denying the Petitioner's post-conviction petition. The Petitioner appealed the denial of post-conviction relief.

## ANALYSIS

The Petitioner contends trial counsel was ineffective in failing to (1) conduct a proper investigation and prepare for trial; (2) convey a plea offer to the Petitioner; (3) prepare a viable defense and request a continuance once the trial court agreed to allow the State to amend the presentment; (4) advise the Petitioner of his right to testify on his own

behalf; and (5) file a sentencing memorandum or present any evidence during the Petitioner's sentencing hearing. The State responds that the post-conviction court correctly held that trial counsel was not ineffective. We agree with the State.

A post-conviction petitioner must establish that his conviction or sentence is void or voidable due to the abridgment of any constitutional right. T.C.A. § 40-30-103. The petitioner bears the burden of proving the allegations of fact in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f); *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). The findings of fact made by a post-conviction court are conclusive on appeal unless the evidence preponderates against them. *Ward*, 315 S.W.3d at 465. This court may not substitute its own inferences for those drawn by the post-conviction court, and questions concerning the credibility of witnesses, the weight and value of the evidence, and the factual issues raised by the evidence are resolved by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). A claim of ineffective assistance of counsel raises a mixed question of law and fact which this court reviews de novo. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). The post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *Id.*

Both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee the accused the right to counsel. This right has been defined as the right to reasonably effective assistance of counsel, or assistance "'within the range of competence demanded of attorneys in criminal cases.'" *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999)). The overall standard of effectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).

To show that relief is warranted on a claim of ineffective assistance of counsel, the petitioner must establish both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007). Deficiency requires showing that counsel's errors were so serious "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To demonstrate deficiency, the petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Pylant v. State*, 263 S.W.3d 854, 868 (Tenn. 2008). Courts must make every effort "'to eliminate the distorting effects of hindsight, to

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 689). "'[A] reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Burns*, 6 S.W.3d 453 at 462. In evaluating counsel's performance, strategic choices "'made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* (quoting *Strickland*, 466 U.S. at 690-91). The reviewing court must begin with "the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all strategic and tactical significant decisions." *Davidson v. State*, 453 S.W.3d 386, 393 (Tenn. 2014).

In determining prejudice, the post-conviction court must decide whether there is a reasonable probability that, absent the errors, the result of the proceeding would have been different. *Grindstaff*, 297 S.W.3d at 216. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Honeycutt*, 54 S.W.3d at 768 (quoting *Strickland*, 466 U.S. at 694). "That is, the Petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." *Finch*, 226 S.W.3d at 316. Because both prongs must be established for relief, a court need not address both if the defendant has failed to prove either deficiency or prejudice. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

The Petitioner contends that trial counsel failed to properly investigate the case, sufficiently meet with him, and review the discovery with him. However, trial counsel testified that after he was appointed to represent the Petitioner, he obtained discovery from the State, met with the Petitioner a number of occasions, reviewed the discovery with him, and utilized the services of an investigator. Trial counsel prepared a defense that was consistent with the Petitioner's insistence that he did not know the victim and was not involved in the offenses. Trial counsel advised the Petitioner against relying primarily upon an alibi defense based on the Petitioner's incarceration on the date of the offenses listed in the presentment. Trial counsel explained that the alibi defense was coupled with and strengthened by a defense that the Petitioner was not involved and did not know the victim. The Petitioner failed to present evidence of any additional investigative steps that trial counsel should have taken or what an additional investigation would have revealed. *See Demarcus Sheriff Smith v. State*, No. W2001-01353-CCA-R3-PC, 2002 WL 1482697, at *4 (Tenn. Crim. App., Mar. 8, 2002) ("If the claim is based upon a failure to properly investigate, then the evidence or witness must be produced so that the post-conviction court judge can properly evaluate the evidence or the witness.").

This court may not guess as to what evidence further investigation may have revealed. *See Black v. State*, 794 S.W.2d 752, 75 (Tenn. 1990). The Petitioner, thus, failed to present evidence establishing that trial counsel was deficient or that any deficiency resulted in prejudice.

The Petitioner asserts that trial counsel was ineffective in failing to engage in plea negotiations with the State and in failing to communicate the details of the plea negotiations with him. However, there was no evidence establishing that the State was willing to offer a plea and did, in fact, offer a plea and that the Petitioner would have accepted a plea agreement in light of his insistence that he was innocent of the offenses. Trial counsel was not deficient in this regard.

The Petitioner maintains that trial counsel was ineffective in failing to develop a viable defense or requesting a continuance once the presentment was amended. The Petitioner argues that trial counsel should have known that the alibi defense was not viable because the discovery materials established that the date listed in the presentment was incorrect. However, trial counsel testified that he reviewed the discovery materials, including the victim's statements. He advised the Petitioner against relying solely upon an alibi defense and prepared a defense that the Petitioner did not know the victim and was not involved in the offenses based on the Petitioner's repeated representations. *See McCoy v. Louisiana*, No. 16-8255, 2018 WL 2186174, at \*16 (U.S. May 14, 2018) (recognizing that "[a]utonomy to decide that the objective of the defense is to assert innocence" belongs to the defendant). Trial counsel did not learn until the trial that the Petitioner had a prior relationship with the victim. Despite the trial court allowing the State to amend the presentment to allege an offense date of "a day in March," trial counsel was able to elicit proof consistent with the Petitioner's claim of an alibi defense. Trial counsel elicited testimony from the victim on cross-examination that she believed she identified the Petitioner in a photographic array, which was dated March 14th, on the day following the offenses, and he elicited testimony from an officer that the Petitioner was incarcerated from March 10th to March 17th.

Moreover, the Petitioner presented no evidence at the post-conviction hearing that a viable alternative defense theory existed. Rather, he continued to deny knowing the victim and being involved in the commission of the offenses and indicated that he believed that trial counsel should have proceeded with the alibi defense. Accordingly, we conclude that trial counsel was not deficient in this regard.

Although the Petitioner claims that trial counsel was ineffective in failing to advise the Petitioner of his right to testify at trial, trial counsel stated that he discussed the decision of whether to testify with the Petitioner. Trial counsel also stated that he advised the Petitioner against testifying because the State would be able to cross-examine the

Petitioner about his prior criminal record. Moreover, during a hearing at trial pursuant to *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999), the Petitioner acknowledged to the trial court that he was aware of his right to testify and that he was waiving that right. Thus, trial counsel was not deficient in his advice.

Finally, the Petitioner maintains that trial counsel was ineffective in failing to file a sentencing memorandum or present evidence of mitigating factors during the sentencing hearing. He, however, did not specify which mitigating factors applied to him and did not present any evidence of mitigating factors at the post-conviction hearing. Therefore, the Petitioner has failed to meet his burden of presenting evidence that trial counsel was deficient or that any deficiency resulted in prejudice.

## CONCLUSION

Upon reviewing the record, the parties' briefs, and the applicable law, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE